**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CONTINENTAL GLASS | ) | |
| SALES & INVESTMENT CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21-cv-6734 |
| v. | ) | |
| | ) | Judge Marvin E. Aspen |
| FIRST FINISH, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Continental Glass Sales & Investment Corp. ("Continental") brought this lawsuit against Defendant First Finish, LLC ("First Finish"), seeking declaratory relief in connection with a dispute over construction work it performed as a subcontractor for First Finish. Four days later, First Finish sued Continental in the District of Maryland over the same dispute. Continental then moved for an order enjoining First Finish from prosecuting the suit it filed in Maryland. (Plaintiff's Motion for an Antisuit Injunction ("Pl.'s Mot.") (Dkt. No. 14); Plaintiff's Memorandum in Support of Motion for an Antisuit Injunction ("Pl.'s Mem.") (Dkt. No. 15).)[1] First Finish countered by asking us to dismiss Continental's Complaint or abstain from hearing the case before us. (First Finish, LLC's Motion to Dismiss Complaint for Declaratory Judgment or Abstain ("Def.'s Mot.") (Dkt. No. 18); First Finish, LLC's Memorandum in Support of Motion to Dismiss Complaint, Abstain, or Transfer Action ("Def.'s Mem.") (Dkt. No. 19).) For the following reasons, both motions are denied.

---

[1] For ECF filings, we cite to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

BACKGROUND

Continental is an Ohio corporation with its principal place of business in Ohio. (Complaint for Declaratory Relief ("Compl.") (Dkt. No. 1) ¶ 5.) First Finish is a Maryland limited liability company with its principal place of business in Maryland. (*Id.* ¶ 3; Case No. 21-cv-3238 (D. Md.), Complaint for Indemnity and Equitable Relief ("Maryland Compl.") (Dkt. No. 1) ¶¶ 1–2.) Continental alleges, upon information and belief, that "none of First Finish's members are citizens of either Illinois or Ohio." (Compl. ¶ 4.)

First Finish, as general contractor, contracted with CP/IPERS Rosemont Hotel, LLC (the "Owner") to perform guest room renovations at the Westin O'Hare in Rosemont, Illinois (the "Project"). (Dec. 10, 2021 Letter from C. Rodgers-Waire to M. Kessler ("Demand Letter") (Dkt. No. 1-3) at 2.) The parties refer to this contract as the "Prime Contract." (*Id.*; Compl. ¶ 9.) First Finish also subcontracted with Continental. (Subcontract Agreement ("Subcontract") (Dkt. No. 19-1); Compl. ¶ 9.) The Subcontract incorporates the Prime Contract by reference. (Compl. ¶ 9; Def.'s Mem. at 3.)

Pursuant to the Subcontract, Continental agreed to furnish and install glass barn door and glass shower door assembly units for the Project. (Subcontract ¶ 4.1 & Ex. A; Compl. ¶ 14; Demand Letter at 2.) According to Continental, however, the defective construction of the hotel's guest rooms prevented it from properly installing its units. (*See* Compl. ¶¶ 15–17, 19.) Continental further alleges that it reasonably attempted to install its units in the defectively constructed rooms. (*Id.* ¶ 23.) Ultimately, though, several doors installed by Continental came off their tracks or shattered. (Demand Letter at 4–7.) First Finish decided to repair Continental's work using another contractor. (*Id.* at 7–8.)

On December 10, 2021, First Finish sent a letter to Continental demanding payment of $358,307 to cover the estimated cost of these repairs. (*Id.* at 8.) In the letter, First Finish listed

2

several provisions from the Prime Contract under the heading "Operative Contract Terms and Obligations," noted that the Prime Contract is one of the Contract Documents that "govern[ed] all work to be performed by Continental," and identified a contractual obligation that bound Continental "[i]n addition to the terms of the Prime Contract[.]" (*Id.* at 2–4.) Later in the letter, First Finish asserted that Continental's argument that it was not responsible for the defective installation was not a defense "given the clear terms of the Prime Contract and Subcontract . . . ." (*Id.* at 7.) First Finish concluded the letter by informing Continental that if it did not pay the demanded amount by December 20, First Finish would file suit against Continental in Maryland. (*Id.* at 8.)

On December 17, Continental sued First Finish in this Court (the "Illinois Lawsuit") based on diversity jurisdiction. (Compl. ¶¶ 3–7.) In the Illinois Lawsuit, Continental seeks a judgment declaring that it is not responsible for the guest rooms' defective construction or any associated repair costs, that it fulfilled all its responsibilities and obligations under the Subcontract and the Prime Contract, and that First Finish failed to fulfill its contractual obligation to provide a worksite free from defective construction. (*Id.* ¶¶ 1, 2, 35.) Four days after Continental filed the Illinois Lawsuit, First Finish sued Continental in the District of Maryland for breach of contract (the "Maryland Lawsuit"). (*See generally* Maryland Compl.)

Before asking us to issue an antisuit injunction, Continental moved in the District of Maryland to dismiss, stay, or transfer the Maryland Lawsuit. (Case No. 21-cv-3238 (D. Md.), Dkt. Nos. 13, 13-1.) On May 12, 2022, the Maryland district court denied Continental's motion to dismiss or transfer the Maryland Lawsuit. (Case No. 21-cv-3238 (D. Md.), Dkt. No. 26.) In light of the proceedings in the Illinois Lawsuit, however, the court stayed the Maryland Lawsuit until June 30, 2022. (*Id.*)

## ANALYSIS

### I.     First Finish's Motion to Dismiss or Abstain

First Finish makes two arguments in its motion to dismiss or abstain.  It first argues that we should dismiss the Illinois Lawsuit based on the applicable forum-selection clause in the Subcontract.  (Def.'s Mem. at 2, 5–11.)  Alternatively, First Finish argues that we should abstain from exercising jurisdiction over the Illinois Lawsuit under the *Wilton/Brillhart* doctrine.  (*Id.* at 2, 11–14.)  We address each argument in turn.

#### A.     The Subcontract's Forum-Selection Clause

First Finish contends that we should dismiss the Illinois Lawsuit because paragraph 13.4 of the Subcontract gives First Finish sole discretion over choosing the forum for the parties' dispute, and First Finish chose the District of Maryland.  (Def.'s Mem. at 1–3, 11.)  We construe First Finish's request for dismissal based on a forum-selection clause as a request to transfer the Illinois Lawsuit under 28 U.S.C. § 1404(a).  *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 52, 59–61, 134 S. Ct. 568, 575, 579–80 (2013) (holding that a motion to transfer under § 1404(a) is the appropriate mechanism for enforcing a forum-selection clause that points to a federal forum).

To resolve this aspect of First Finish's motion, we must determine whether the forum-selection clause upon which First Finish relies, paragraph 13.4, is valid and applicable to the dispute at hand.  *See Evoqua Water Techs., LLC v. AFAM Concept Inc.*, No. 21 C 4708, 2022 WL 117769, at *1, *3 (N.D. Ill. Jan. 12, 2022) (denying motion to dismiss based on a forum-selection clause because the clause was invalid); *Lukis v. Whitepages Inc.*, 535 F. Supp. 3d 775, 792 (N.D. Ill. 2021) ("[T]ransfer under § 1404(a) is warranted only if the [forum-selection] clause applies to the suit in question.").  At the outset, the parties disagree about which state's

4

law governs these determinations.[2]  First Finish says Maryland law governs because paragraph 14.11 of the Subcontract states that the agreement "shall be interpreted and enforced in accordance with the laws of the State of Maryland." (Def.'s Mem. at 3, 5, 9; Subcontract ¶ 14.11.)  Continental disagrees; it says Illinois law governs because a different provision, paragraph 13.3, states that for disputes involving the Prime Contract, the Subcontract "shall be governed by and construed in accordance with the laws of the State of Illinois, without regard to any choice or conflict of laws provisions." (Plaintiff Continental Glass Sales & Investment Corp.'s Opposition to Defendant's Motion to Dismiss Complaint, Abstain or Transfer Action ("Pl.'s Opp'n") (Dkt. No. 23) at 3, 7–8; Subcontract ¶ 13.3.)  Continental also contends that Illinois's Building and Construction Contract Act, 815 Ill. Comp. Stat. 665/1 *et seq.* (the "Construction Act"), renders paragraph 14.11 invalid.  (Pl.'s Opp'n at 8–9.)

Our jurisdiction is based on diversity of citizenship, so we look to the substantive law of the forum state, including its choice-of-law rules, "to determine which state's law applies to the issues before" us.  *Sosa v. Onfido*, 8 F.4th 631, 637 (7th Cir. 2021) (quotation marks omitted); *Great W. Cas. Co. v. Robbins*, 833 F.3d 711, 715 (7th Cir. 2016).  Relevant here, Illinois's choice-of-law rules direct us to apply forum law unless the party seeking the choice-of-law determination demonstrates an actual conflict with another state's law.  *Sosa*, 8 F.4th at 637. This remains true even when a choice-of-law clause identifies the law of a state other than the forum state—the party seeking to invoke that clause still must demonstrate an actual conflict between that state's law and the forum state's law.  *See id.* at 637–38.

---

[2] Although many federal circuits hold that federal law governs the enforceability of a forum-selection clause, the Seventh Circuit holds that the validity and meaning of a forum-selection clause is governed by the law that governs the rest of the contract in which the clause appears. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 774–75 & n.21 (7th Cir. 2014).

First Finish is the party seeking to invoke paragraph 14.11's choice of Maryland law. Yet First Finish's opening brief does not discuss whether Maryland law conflicts with Illinois law; it simply assumes that paragraph 14.11 requires us to apply Maryland law. (*See, e.g.*, Def.'s Mem. at 3–5, 9.) What is more, First Finish's reply fails to address any conflicts between Maryland and Illinois law even though Continental's opposition asserts that Illinois law governs. (*See generally* First Finish's Reply in Support of Motion to Dismiss ("Def.'s Reply") (Dkt. No. 24).) First Finish simply makes no attempt to establish an actual conflict between Maryland and Illinois law. This failure alone justifies applying Illinois law to determine whether paragraph 13.4 requires the parties to litigate in Maryland. *See Sosa*, 8 F.4th at 634, 637–38 (affirming Illinois district court's application of Illinois law to determine whether the defendant could enforce an arbitration clause where the defendant, who sought to invoke the contract's Washington choice-of-law provision, failed to demonstrate a conflict between Illinois and Washington law); *see also SBC Holdings, Inc. v. Travelers Cas. & Sur. Co.*, 374 Ill. App. 3d 1, 13, 872 N.E.2d 10, 21 (1st Dist. 2007) ("In the absence of a conflict, Illinois law applies as the law of the forum.").

But even if First Finish had demonstrated an actual conflict, thereby making a choice-of-law analysis necessary, Illinois law would still govern our contractual analysis. Although "Illinois courts usually enforce contractual choice-of-law provisions," *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 300 (7th Cir. 2018), section 10 of Illinois's Construction Act alters this general rule when contracts for construction in Illinois are at issue, *see Foster Wheeler Energy Corp. v. LSP Equip., LLC*, 346 Ill. App. 3d 753, 760–62, 805 N.E.2d 688, 694–95 (2d Dist. 2004) (explaining that section 10 of the Construction Act "substantively changed the law" that previously allowed parties to freely contract about what state's law "governs construction

contracts in Illinois").  Under section 10, a choice-of-law provision that makes "a building and construction contract to be performed in Illinois" subject to another state's laws "is against public policy" and "void and unenforceable."  815 Ill. Comp. Stat. 665/10.  A "building and construction contract" is "a contract for the design, construction, alteration, improvement, repair, or maintenance of real property, highways, roads, or bridges."  *Id.* § 5.  Although the Construction Act does not define "real property," we agree with another judge in this District who defined this term as "land and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land."  *McCoy v. Gamesa Tech. Corp.*, No. 11 C 592, 2012 WL 245162, at *4 (N.D. Ill. Jan. 26, 2012) (relying upon Black's Law Dictionary).

The Subcontract is a "building and construction contract to be performed in Illinois." Pursuant to the Subcontract, Continental agreed to furnish and install glass barn door and glass shower door assembly units at a hotel in Rosemont, Illinois.  (Subcontract ¶ 4.1 & Ex. A; Compl. ¶ 14; Demand Letter at 2.)  This constitutes a contract for the construction, alteration, or improvement of real property—the hotel, which is erected on land—that was performed in Illinois.  First Finish effectively concedes this point by not arguing otherwise.  (*See generally* Def.'s Reply (failing to dispute Continental's contention that the Construction Act applies)); *see Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").  Therefore, section 10 of the Construction Act applies to the Subcontract and renders paragraph 14.11's choice of Maryland law "void and unenforceable" as violative of Illinois's public policy.  815 Ill. Comp. Stat. 665/10; *Evoqua Water Techs.*, 2022 WL 117769, at *3 ("Because the [Construction] Act applies, the Contract's Pennsylvania choice of law clause is invalid as against Illinois public policy."); *see also Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 859, 861 (7th Cir. 2020) (federal court sitting in diversity in Illinois honors an agreement's

choice-of-law clause "*unless* to do so would be contrary to public policy" (emphasis added)).

Illinois law governs the validity and meaning of paragraph 13.4 for this reason as well. *Jackson*,

764 F.3d at 769, 774, 777 (where Illinois district court's jurisdiction was based on the parties'

diversity of citizenship, Illinois law would determine whether the contract's choice-of-forum

clause was valid if the contract's choice-of-law clause was invalid); *Evoqua Water Techs.*, 2022

WL 117769, at *2–3 (in diversity case, Illinois law governed the validity and meaning of the

contract's forum-selection clause because the contract's Pennsylvania choice-of-law clause was

invalid under the Construction Act).

     With the governing law settled, we now turn to whether paragraph 13.4 of the

Subcontract requires the parties to litigate their dispute in the District of Maryland. Paragraph

13.4 states:

> Except as otherwise provided, all claims, disputes and other matters
> in question arising from or relating to this [Subcontract] or the
> Contract Documents, or breach thereof, shall be decided, at [First
> Finish's] sole discretion, by an arbitration panel or court of
> competent jurisdiction in the State of Maryland or the jurisdiction
> where the Project is located.

(Subcontract ¶ 13.4.) According to First Finish, because paragraph 13.4 is valid, enforceable,

and applicable, First Finish's choice of Maryland as the forum for the parties' dispute means the

parties must litigate the dispute there. (Def.'s Mem. at 2, 11.) Continental responds that the

parties' dispute involves the Prime Contract, so the applicable forum-selection clause is not

paragraph 13.4, but paragraph 13.3, which requires the parties to litigate "[a]ny dispute between

[First Finish] and [Continental] arising out of the acts, omissions or responsibilities of the Owner

or involving the prime contract" in "a court of competent jurisdiction located in the State of

Illinois, County of Cook." (Pl.'s Opp'n at 4–8; Subcontract ¶ 13.3.) Furthermore, Continental

continues, paragraph 13.4 is invalid to the extent it requires the parties to litigate outside of Illinois. (Pl.'s Opp'n at 8–9.)

We need not definitively decide whether paragraph 13.4 applies to the parties' dispute because even if it does, the portion of paragraph 13.4 that First Finish relies upon is unenforceable under Illinois law. When applicable, section 10 of the Construction Act renders forum-selection provisions that require "litigation . . . to take place in another state . . . void and unenforceable" as "against public policy." 815 Ill. Comp. Stat. 665/10; *see McCoy*, 2012 WL 245162, at *4 ("[T]he Illinois Construction Act declares that forum selection clauses . . . in certain construction contracts are against public policy and, therefore, unenforceable."); *Foster Wheeler*, 346 Ill. App. 3d at 757, 805 N.E.2d at 691 ("Section 10 voids any Illinois construction contract provision that purports to choose the . . . forum of another state for purposes of resolving disputes under the contract."). Because the Construction Act applies to the Subcontract, paragraph 13.4 is unenforceable to the extent it requires the parties to litigate disputes in the courts of Maryland. 815 Ill. Comp. Stat. 665/10; *Evoqua Water Techs.*, 2022 WL 117769, at *1, *3 (holding that a forum-selection clause requiring the parties to litigate in Pennsylvania was unenforceable because the contract was governed by the Construction Act); *McCoy*, 2012 WL 245162, at *1, *5–6 (same).

First Finish does not argue that the Construction Act is inapplicable or that paragraph 13.4 is valid and enforceable despite the Act's applicability. In fact, First Finish does not mention the Construction Act at all in its briefing. (*See generally* Def.'s Mem.; Def.'s Reply.) First Finish instead contends that paragraph 13.4 is valid and enforceable under Maryland law, which adopts the federal standard for enforcing a forum-selection clause. (Def.'s Mem. at 8–9.) But Illinois law governs our analysis of paragraph 13.4's validity, not Maryland law. And

Illinois's Construction Act renders paragraph 13.4 "void and unenforceable" to the extent it requires the parties to litigate outside of Illinois. 815 Ill. Comp. Stat. 665/10.

*Whiting-Turner Contracting Co. v. Westchester Fire Insurance Co.*, a District of Maryland case relied upon by First Finish, does not convince us otherwise. (Def.'s Mem. at 9–11.) In *Whiting-Turner*, the plaintiff sued the defendant over a contract for a construction project in Pennsylvania. Civil No. JFM-13-348, 2013 WL 3177881, at *1 (D. Md. June 20, 2013). The contract contained a forum-selection clause that required the parties to litigate in Maryland. *Id.* at *1, *3. The defendant moved to dismiss for improper venue, arguing that the forum-selection clause was unenforceable because Pennsylvania law "prohibits forum-selection provisions that require out-of-state litigation" in similar construction contracts. *Id.* at *3. The court rejected this argument and found the forum-selection clause enforceable. *Id.* at *3–5.

*Whiting-Turner* is distinguishable in at least two key respects. First, the *Whiting-Turner* court applied federal law to determine the enforceability of the forum-selection clause at issue. 2013 WL 3177881, at *3–4. In contrast, we are applying Illinois law—and the Construction Act in particular—to determine paragraph 13.4's enforceability. Second, the *Whiting-Turner* court found it inappropriate to defer to "Pennsylvania's avowed disapproval of out-of-state forum-selection clauses in construction contracts" because Pennsylvania was not the forum state. *Id.* at *3. But here, the state that disapproves of forum-selection clauses like paragraph 13.4 *is* the forum state. Given these differences, *Whiting-Turner* does not help First Finish's argument.

Paragraph 13.4 of the Subcontract is void and unenforceable to the extent it requires Continental to litigate its claim in the District of Maryland. Because this provision is the only basis for First Finish's motion to dismiss the Illinois Lawsuit, we deny the motion. *See Evoqua Water Techs.*, 2022 WL 117769, at *3 (denying similar motion to dismiss because the defendant

offered "no reason other than the [invalid] forum selection contractual clause to dismiss or transfer [the] case").

### B.    The *Wilton/Brillhart* Doctrine

Alternatively, First Finish asks us to abstain from exercising jurisdiction over the Illinois Lawsuit based upon the *Wilton/Brillhart* doctrine. (Def.'s Mem. at 11–14.)  Under the *Wilton/Brillhart* doctrine, a district court can "stay or dismiss an action seeking a declaratory judgment in favor of an ongoing state court case." *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010); *see Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115 S. Ct. 2137, 2143 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494–95, 62 S. Ct. 1173, 1175–76 (1942).  "This discretion arises from the Declaratory Judgment Act, . . . which provides that district courts '*may* declare the rights and other legal relations of any interested party seeking such declaration." *Envision Healthcare*, 604 F.3d at 986 (emphasis in original) (quoting 28 U.S.C. § 2201(a)).

Continental argues that the *Wilton/Brillhart* doctrine does not require us to abstain because (1) the doctrine deals with "parallel federal and state court proceedings," not two federal proceedings; and (2) paragraph 13.3 of the Subcontract requires the parties to litigate their dispute in Illinois. (Pl.'s Opp'n at 11–12 & n.5.)  First Finish concedes that courts typically apply the *Wilton/Brillhart* doctrine where there is parallel state court litigation, but it contends that we should still rely upon the doctrine to abstain from hearing the Illinois Lawsuit, especially because the parallel action here (the Maryland Lawsuit) is pending in the parties' contractually mandated forum. (Def.'s Mem. at 12–14.)

We first consider whether the *Wilton/Brillhart* doctrine even applies where, as here, the other proceeding is in federal court.  Both *Wilton* and *Brillhart* addressed whether a district court could stay or dismiss a declaratory judgment case in favor of pending state court litigation.

11

*Wilton*, 515 U.S. at 279–80, 115 S. Ct. at 2139; *Brillhart*, 316 U.S. at 492–94, 62 S. Ct. at 1174–75. The Seventh Circuit has also characterized the *Wilton/Brillhart* doctrine as applying when the other lawsuit is in state court. *See, e.g.*, *Arnold v. KJD Real Est., LLC*, 752 F.3d 700, 707 (7th Cir. 2014); *Envision Healthcare*, 604 F.3d at 986. Nonetheless, "there is no set criteria for when a court should exercise its discretion" to stay or dismiss a case under the *Wilton/Brillhart* doctrine. *Envision Healthcare*, 604 F.3d at 986. Nor does Continental direct us to any case indicating that we can apply the *Wilton/Brillhart* doctrine *only* when the other case is pending in state court. (*See* Pl.'s Opp'n at 11–12.) To the contrary, "*Wilton* expressly reserved the question whether the lack of a pending state court proceeding limited a district court's discretion to decide or dismiss a declaratory judgment action." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 392 (5th Cir. 2003); *see Wilton*, 515 U.S. at 289–90, 115 S. Ct. at 2144 (declining to "delineate the outer boundaries" of a district court's discretion to hear a declaratory judgment action in other cases, such as cases where "there are no parallel state proceedings"). Furthermore, although courts often speak of "abstaining" under the *Wilton/Brillhart* doctrine, a district court's ability to stay or dismiss a declaratory judgment case does not derive from a judicially created abstention doctrine, but from the Declaratory Judgment Act itself, which does not require the pendency of state court litigation. 28 U.S.C. § 2201(a); *Med. Assurance Co. v. Hellman*, 610 F.3d 371, 378–79 (7th Cir. 2010). Thus, that the Maryland Lawsuit is in federal court does not render the *Wilton/Brillhart* doctrine inapplicable. *See Med. Assurance*, 610 F.3d at 379.

We next come to the parties' dispute over where they agreed to litigate Continental's claim. The parties devote much of their briefing to debating whether Continental's claim falls within the scope of paragraph 13.3 or paragraph 13.4 of the Subcontract. (Def.'s Mem. at 3, 5–8; Pl.'s Opp'n at 4–8; Def.'s Reply at 1–5.) In the end, though, the debate is beside the point. If

Continental's claim is governed by paragraph 13.3, as Continental contends, the parties must litigate the claim in Illinois. (*See* Subcontract ¶ 13.3 (requiring litigation in "a court of competent jurisdiction located in the State of Illinois, County of Cook").) But if Continental's claim is governed by paragraph 13.4, as First Finish contends, the parties *still* must litigate the claim in Illinois. Because paragraph 13.4 is unenforceable to the extent it requires the parties to litigate in Maryland, this provision allows the parties to litigate Continental's claim in only one court: a "court of competent jurisdiction in . . . the jurisdiction where the Project is located." (*Id.* ¶ 13.4.) And the location of the project, the Westin O'Hare in Rosemont, is in Cook County, Illinois. Under either paragraph 13.3 or paragraph 13.4, the parties must litigate Continental's claim in a court in Illinois. Therefore, we decline to dismiss or stay the Illinois Lawsuit.

Our decision is further supported by a concern for comity, which underlies the *Wilton/Brillhart* doctrine. *Arnold*, 752 F.3d at 707. Comity is "the notion that federal courts should respect the legitimate interests of state governments and try to avoid unduly interfering with those interests." *Runes v. Sherman*, No. 00 C 7995, 2001 WL 618976, at *2 (N.D. Ill. May 25, 2001). As an Illinois federal court sitting in diversity, we should respect legislative pronouncements that reflect Illinois's public policy. *See Lopardo v. Fleming Cos.*, 97 F.3d 921, 931 (7th Cir. 1996) (noting that a court in a diversity case should not disturb a policy reflected in state law); *Maher & Assocs., Inc. v. Quality Cabinets*, 267 Ill. App. 3d 69, 75, 640 N.E.2d 1000, 1005 (2d Dist. 1994) ("When the legislature, by enacting a statute, declares the public policy of the State, the judicial branch must defer to that pronouncement."). Illinois's public policy, as reflected in section 10 of the Construction Act, is "that, if you build in Illinois, you litigate in Illinois." *Dancor Constr., Inc. v. FXR Constr., Inc.*, 2016 IL App (2d) 150839, ¶ 81 & n.2, 64 N.E.3d 796, 815 & n.2. Refusing to hear the Illinois Lawsuit would arguably contravene this

public policy, which desires for disputes over Illinois construction projects to be litigated in Illinois. As such, even if the Subcontract did not restrict where the parties may litigate their dispute, we would not find it appropriate to invoke the *Wilton/Brillhart* doctrine to make the parties litigate their dispute in Maryland.

For these reasons, we deny First Finish's motion to abstain under the *Wilton/Brillhart* doctrine.

## II.    Continental's Motion for an Antisuit Injunction

We now turn to Continental's motion, which seeks to enjoin First Finish from pursuing the Maryland Lawsuit.[3] (Pl.'s Mot. at 1.) In doing so, Continental asks for "an extraordinary form of relief." *In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 762 (7th Cir. 2017) (quotation marks omitted). Federal district courts generally avoid interfering with each other's cases, and "[i]t is particularly rare for a federal court to enjoin litigation in another federal court." *Id.* at 761–62. Even so, a federal district court may, pursuant to its inherent equitable powers or the All Writs Act, enjoin a party from pursuing another federal litigation in some circumstances. *See id.* at 761–63. For instance, when two lawsuits involving the same parties and issues are pending at the same time, the court overseeing the first lawsuit may enjoin the prosecution of the second lawsuit. *Id.* at 762 (citing *Martin v. Graybar Elec. Co.*, 266 F.2d 202, 204 (7th Cir. 1959)). In addition, "a district court may enjoin a defendant from pursuing an 'identical' claim against the plaintiff in another district court that should have been, but was not, asserted as a

---

[3] In the conclusion of its opening memorandum, Continental also asks us to enter an order requiring the Maryland Lawsuit to be dismissed. (Pl.'s Mem. at 10.) We do not consider this request, which is unsupported by any legal authority or developed argument. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

compulsory counterclaim in the first case." *Id.* (citing *Asset Allocation & Mgmt. Co. v. W. Emps. Ins. Co.*, 892 F.2d 566, 571–72 (7th Cir. 1989)).

Continental contends that we can enjoin First Finish from prosecuting the Maryland Lawsuit on two grounds: (1) the Maryland Lawsuit and the Illinois Lawsuit concern the same parties and issues; and (2) the claim First Finish asserts in the Maryland Lawsuit should have been, but was not, asserted as a compulsory counterclaim in the Illinois Lawsuit. (Pl.'s Mem. at 5, 7–9.) The first ground is unquestionably present. Continental and First Finish are the only parties in either lawsuit, and they agree that the issues in both lawsuits are the same. (*See, e.g.*, *id.* at 7; First Finish's Opposition to Plaintiff's Motion for an Antisuit Injunction ("Def.'s Opp'n") (Dkt. No. 21) at 3.) As for the second ground, First Finish does not dispute that the claim it asserts in the Maryland Lawsuit is "identical" to the claim it will have to file as a compulsory counterclaim in the Illinois Lawsuit. (*See generally* Def.'s Opp'n.) First Finish, however, argues that Continental brought its motion before First Finish was obligated to file counterclaims in the Illinois Lawsuit, and "the fact that First Finish has not done something it is not yet required to do under the law cannot form the basis to enjoin" it from proceeding with the Maryland Lawsuit. (*Id.* at 4.) First Finish's argument misses the mark. The basis for a court's power to enjoin a defendant from pursuing a compulsory counterclaim in another suit is practical: "to facilitate the economical management of complex litigation." *Asset Allocation*, 892 F.2d at 572. Because First Finish does not dispute that the claim it asserts in the Maryland Lawsuit will have to be brought as a compulsory counterclaim in the Illinois Lawsuit (if the Illinois Lawsuit proceeds), it makes practical sense for us to consider issuing an antisuit injunction based on this ground even though no counterclaim is yet due. *Cf. In re Jimmy John's Overtime Litig.*, 877 F.3d at 761 (a district court's resolution of "issues related to duplicative

15

litigation . . . does not counsel rigid mechanical solution of such problems" (quotation marks omitted)).  We therefore have the authority to enjoin First Finish from pursuing the Maryland Lawsuit for either of the reasons identified by Continental.  *See id.* at 762.

But just because we can issue an antisuit injunction does not mean we should.  *Id.* at 769 ("Even if the district court had authority to issue the anti-suit injunction under the All Writs Act or its inherent equitable powers, . . . [it] must still determine whether an injunction is an appropriate exercise of its authority." (quotation marks omitted)); *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1263 (7th Cir. 1977) (that a court has the "power to enjoin subsequent proceedings in another jurisdiction . . . does not necessarily entail the conclusion that it was required to exercise that power").  The Seventh Circuit in *In re Jimmy John's Overtime Litigation* explained that for a federal-federal antisuit injunction to issue, the traditional factors for obtaining preliminary injunctive relief—a likelihood of success on the merits, inadequate legal remedies, a likelihood of irreparable harm, a balance of equities that tips in the movant's favor, and that an injunction is in the public interest—must be met.  877 F.3d at 769–71 (finding that the district court abused its discretion by enjoining parties from proceeding in other federal lawsuits without considering these factors).  The party seeking the injunction, Continental, bears the burden of establishing these factors.  *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020); *In re Jimmy John's Overtime Litig.*, 877 F.3d at 769.

Continental makes no attempt to satisfy the preliminary injunction factors.  In fact, Continental does not even mention any of these factors in its briefing.  (*See generally* Pl.'s Mem.; Reply of Continental Glass Sales & Investment Corp. in Further Support of Its Motion for an Antisuit Injunction ("Pl.'s Reply") (Dkt. No. 22).)  Because Continental has not met its burden for obtaining an antisuit injunction, we must deny its motion.  *See Orr v. Shicker*, 953

16

F.3d 490, 501 (7th Cir. 2021) ("If the plaintiff fails to meet [the preliminary injunction] requirements, the court must deny the injunction.").

In denying Continental's motion, we recognize that we have found that the parties must litigate their dispute in Illinois regardless of whether paragraph 13.3 or paragraph 13.4 of the Subcontract applies. Nonetheless, Continental does not direct us to any authority suggesting that this finding excuses it from proving the injunction factors that are necessary for us to enjoin First Finish from litigating the parties' dispute in the District of Maryland.

Nor does the "first-to-file" rule (*see, e.g.*, Pl.'s Mem. at 6–7) justify granting Continental's requested antisuit injunction. Under the first-to-file rule, when duplicative lawsuits have been filed in different federal district courts, the district court overseeing the second-filed case can dismiss, transfer, or stay its case in favor of the first-filed case. *Askin v. Quaker Oats Co.*, No. 11 CV 111, 2012 WL 517491, at *3 (N.D. Ill. Feb. 15, 2012); *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009). The first-to-file rule, however, derives from a district court's inherent power to administer its *own* docket by dismissing, transferring, or staying the case before it, *see Askin*, 2012 WL 517491, at *3, so we do not see how the rule provides a basis for us to issue an injunction that affects another court's docket. And even if the first-to-file rule could support the issuance of an antisuit injunction, Continental does not cite any case holding that application of this rule allows a party to obtain such an injunction without also satisfying the traditional elements necessary for a preliminary injunction.

The closest Continental gets is its reliance on the Seventh Circuit's decision in *Graybar Electric* (*see, e.g.*, Pl.'s Mem. at 9–10; Pl.'s Reply at 6–7), where the court, without mentioning the traditional injunction factors, reversed a district court's refusal to issue an antisuit injunction against a subsequently filed lawsuit and remanded with instructions to issue the injunction. 266

17

at 203–05. But the Seventh Circuit has read *Graybar Electric* as empowering—not requiring—a district court to issue an injunction in such circumstances. *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 979–80 (7th Cir. 2010) (rejecting the plaintiff's argument that under *Graybar Electric*, "absent unusual circumstances, a party filing later in time should be enjoined from further prosecution"). As already discussed, the issue is not whether we have the power to issue an antisuit injunction against First Finish; the issue is whether Continental has shown that such an injunction is appropriate. Moreover, the *In re Jimmy John's Overtime Litigation* court cited *Graybar Electric* several times, 877 F.3d at 762, 765, yet still held that establishing the traditional injunction factors is required before an antisuit injunction can issue, *id.* at 769–71, which indicates that *Graybar Electric* is not to the contrary. Thus, even if the Illinois Lawsuit warrants priority under the first-to-file rule (an issue we need not decide), this priority does not satisfy Continental's burden for obtaining an antisuit injunction.

Because Continental has not shown that any, let alone all, of the preliminary injunction factors are met, we deny its motion for an antisuit injunction.

## CONCLUSION

For the foregoing reasons, Continental's motion for an antisuit injunction (Dkt. No. 14) and First Finish's motion to dismiss or abstain (Dkt. No. 18) are denied. First Finish shall have until June 13, 2022, to file an answer and any counterclaims. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: May 23, 2022